BRILL v. NORTH JERSEY ST. RY. CO.

(Circuit Court, D. New Jersey. November 9, 1903.)

1. DECREE—OPENING—NEWLY DISCOVERED EVIDENCE.

A defendant applied for the opening of an interlocutory decree, sustaining certain patents and finding infringement, on the ground of newly discovered patents alleged to anticipate or limit those in suit, and for a rehearing of the case after the introduction of such additional patents. *Held*, that the application must be denied on three independent grounds; first, because it did not appear that any search prior to the hearing was made on the part of the defendant for patents germane or allied to those in suit according to their proper and usual location, arrangement and classification in the patent office; secondly, because it appeared by the admission of the solicitors of the defendant that they had knowledge for more than a week before the signing of the decree of the existence of the alleged newly discovered patents and withheld that knowledge from the court until several days had elapsed after the decree was signed, although both parties by their solicitors were present before the court at the time and had knowledge of the formulation and settlement of the terms of such decree; and, thirdly, because from an examination of the patents sought to be introduced, in connection with the expert and other affidavits and the record of the case, it appeared that those patents were immaterial so far as the result embodied in the decree was concerned.

(Syllabus by the Court.)

See 124 Fed. 778.

Duell, Megrath & Warfield, for petitioners.

Edmond Wetmore, Francis Rawle, and Joseph L. Levy, for complainants.

BRADFORD, District Judge. An interlocutory decree was made in this case October 14, 1903, sustaining and finding infringement

of claims 6, 10, 11, 13, 14, 15, 30, 80, 81 and 87 of patent No. 627,898, granted to George M. Brill, dated June 27, 1899, and claims 13 and 17 of patent No. 627,900, also granted to George M. Brill, dated June 27, 1899, and awarding an injunction and an accounting. The North Jersey Street Railway Company has applied by petition for the opening of the decree and a rehearing of the case to the end that it may file an amended or supplemental answer setting up certain alleged newly discovered matter, consisting of patent No. 112,897, granted to Chauncey S. Buck, dated March 21, 1871, and patent No. 104,876, granted to Addison Overbagh, dated June 28, 1870. This application must be denied on three several and independent grounds.

First. The affidavits before the court do not negative laches on the part of the defendant in failing to produce the Buck and Overbagh patents in evidence in due course prior to the hearing of the case, but, on the contrary, strongly tend to establish such laches. The firm of Duell, Megrath & Warfield, the present solicitors of the defendant, became such prior to the hearing, but not until after the close of the evidence on its behalf. Mr. Warfield, one of that firm, in his affidavit, says:

"The facts relative to the Buck and Overbagh patents are within my personal knowledge, as I was the one who discovered such patents. * * * From time to time since our firm took charge of this case I have examined the patents in the truck art for the purpose of seeing if anything existed which had not been brought to the attention of the court, and it was almost an accident that led to the discovery of the Buck patent."

He does not state when or the circumstances under which the patents, now sought to be introduced, were discovered, nor the nature of the accident which resulted in the discovery of the Buck patent. Nor does he indicate the means or method resorted to by him or any other person for the purpose of ascertaining the existence of any patent or patents germane to the defence of anticipation or prior art. Edgar Peckham, president of the Peckham company, which manufactured the infringing truck mechanism, in his affidavit says:

"Before our company commenced to manufacture the trucks complained of herein and which have been held to be infringements upon some of the claims of the two patents in suit, I instructed our then solicitor and counsel, J. E. M. Bowen, now deceased, to make a thorough investigation to determine whether such trucks would be infringements upon any then existing patents. and also to thoroughly develop the prior art so that we might know what, if anything, was patentable. Mr. Bowen made such investigation and submitted the result to us. Among the patents developed by this examination was the Thyng patent, No. 4,276, November 18, 1845, but his search did not disclose any of the patents now sought to be brought to the attention of the court herein. After this suit was commenced Mr. Bowen, under our instructions, made a further examination, in order to set up any prior patents bearing upon the subject which he might discover in the answer herein. Such examination did not disclose the patents now sought to be called to the attention of the court. After that Mr. Bowen died and we retained Henry P. Wells in place of Mr. Bowen. Mr. Wells stated to me that he would like to make a further investigation, and I instructed him to do so and to make it as thorough as possible. I was informed by Mr. Wells that he caused such examination to be made, with the result of finding certain patents which we set up in an amendment to the answer, but such examination did not disclose any of the patents now sought to be brought to the attention of the court. Mr. Wells, in the summer or early fall of 1901, was obliged, owing to ill health,

to give up the defense of this suit, and our company retained Duell, Megrath and Warfield, who have since acted for the defendant herein. * * * Our previous attorneys were instructed to make the most extensive and thorough research possible, and we were informed that they had so done."

Mr. Peckham does not state that he has any personal knowledge of what was done by any of the solicitors of the defendant in any effort to ascertain what the records and papers of the patent office would disclose touching the defence of anticipation or prior art set up in this case. It appears that his statements on the subject of examinations made for patents pertinent and material to the defense were wholly based upon information derived from others. Nor does he even aver on information and belief the method of conducting such investigation nor the extent to which it proceeded. These two affidavits contain in substance all that is brought forward to relieve the defendant from the imputation of laches. On the other hand, the complainant has produced a number of affidavits, wholly uncontradicted, clearly showing the usual and proper method for conducting an examination in the patent office to ascertain the existence of patents relating to any art or branch thereof. Among them are those of George R. Simpson, who for more than eight years has been examiner in charge of division 34 of the patent office; Howard A. Coombs, an assistant examiner from May, 1896, to September, 1903; W. W. Hite, who for more than seven years has been chief of the draftsman's division of the patent office; O. Ellery Edwards, Jr., an assistant examiner for more than six years; and William F. Hall, John H. Holt, J. Granville Meyers, Jr., William N. Cromwell and A. V. Cushman, all of whom are familiar with the system of classification of patents in the patent office and have been actively engaged in searching the records of the office for patents, anticipatory or illustrative of the prior art, for periods ranging from seven to fourteen years. It satisfactorily appears from the affidavits and exhibits on the part of the complainant that the Overbagh patent was included in sub-class 240 of class 105, in division 34, of the patent office, and the Buck patent in sub-class 243 of the same class in the same division; that class 105 has the heading "Railway Rolling-stock"; that sub-class 240 specifies "Equalizing-levers" under the headings "Trucks" and "Electric-motor"; that sub-class 243 specifies "Bogies" under the headings "Trucks" and "Four-wheel"; that the above classification and sub-classification of the two patents were in existence prior to the time of the institution of this suit, and have ever since remained unchanged; that both of the patents were properly so classified; that both of the Brill patents in suit properly belong to class 105 in division 34 and to sub-class 239, specifying "Bogies" under the headings "Trucks" and "Electric-motor," and are now so classified, and, although it does not appear when they were first so classified, in the absence of evidence to the contrary, it may fairly be assumed that such classification was promptly made in the due performance of official duty; that the Brill patent No. 627,899, which was divisional in its relation to the patents in suit, was duly included in sub-class 243, class 105, in divi-·

sion 34; that all United States patents are classified in the patent office in accordance with the arts to which they appertain, and are properly and intelligibly sub-classified; that one set of copies of all United States patents so classified is distributed among the several examining divisions of the patent office for the use of the patent office examiners, and another complete set properly classified is placed in what is termed the "attorneys' room of the United States patent office"; that copies of the patents as arranged and located in the patent office are readily accessible in the attorneys' room according to their classification and sub-classification to attorneys and others making search as a matter of right, and to attorneys in the examiner's room as a matter of courtesy; that to have fully ascertained the prior art in its relation to the patents in suit a search should have been made extending through class 105 and especially the sub-classes including the designations and headings above mentioned. A due and careful search for patents, relative to those in suit, according to their proper and usual location, arrangement and classification in the patent office, would have seasonably disclosed the Buck and Overbagh patents. There is, however, no direct or sufficient evidence that such a search was made on the part of the defendant. Such omission constituted laches fatal to the granting of the present application.

Secondly, it is admitted by the solicitors for the defendant that copies of the Buck and Overbagh patents were in their possession for at least a week before the signing of the interlocutory decree, October 14, 1903. The solicitors for both parties were present at the formulation and settlement of the terms of that decree, yet neither the Buck nor Overbagh patent was mentioned to the court, nor was it in any manner stated or intimated that an application would or might be made for a rehearing of the case. The defendant should be precluded from asserting the materiality to the case of the very patents of which it had knowledge prior to the signing of the interlocutory decree, and copies of which, in its possession, it withheld from the knowledge of the court until after the decree was signed. The conduct of the defendant amounted to a statement by it that the Buck and Overbagh patents would not have changed the result had they been adduced in evidence. The elements essential to a technical estoppel probably are not present. But, aside from any question of estoppel, or of the materiality of the evidence now sought to be introduced, I am satisfied that the granting of the present application would establish a precedent tending to encourage laches and wholly irreconcilable with the due, prompt and economical administration of justice.

Thirdly, it is extremely doubtful whether the Buck and Overbagh patents are of such a nature as to invalidate or otherwise affect the patents in suit, or either of them, with respect to the claims which have been sustained and held infringed. An examination of the patents sought to be introduced, in connection with the expert and other affidavits and the record of the case, leads me to believe that those patents are immaterial so far as the result embodied in the

interlocutory decree is concerned. It would answer no useful end, especially in view of the conclusions above reached, to elaborate this branch of the subject.

The petition must be denied with costs.